**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAUL GOSSETT,
              *Plaintiff-Appellant,*

              v.

AL CZECH, Trust Officer,
              *Defendant-Appellee.*

No. 06-16973

D.C. No.
CV-04-03523-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted June 4, 2009
Pasadena, California

Filed September 9, 2009

Before: William A. Fletcher, Richard R. Clifton and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

Paul Gossett, pro se plaintiff-appellant.

Charles C. Lifland, Jeremy Maltby, and A. Patricia Klemic, O'Melveny & Myers LLP, Los Angeles, California, amicus curiae in support of plaintiff-appellant Paul Gossett.

Tanya L. Jackson, UCLA School of Law Ninth Circuit Clinic, Los Angeles, California, amicus curiae in support of plaintiff-appellant Paul Gossett.

Edmund G. Brown, Jr., Attorney General of the State of California, and Harry T. Gower, Deputy Attorney General, San Francisco, California, for the defendant-appellee Al Czech.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Paul Gossett (Gossett), a committed inmate at Napa State Hospital (the Hospital), appeals from the district court's summary judgment order in his 42 U.S.C. § 1983 action alleging that Al Czech (Czech), the Trust Officer of the Hospital, unlawfully took a portion of his Department of Veterans Affairs (VA) benefits each month and applied the money to partially defray the cost of Gossett's care at the Hospital. Gossett claims this reimbursement violated the statutory provision that makes benefits earned by United States military veterans "exempt from the claims of creditors." 38 U.S.C. § 5301(a)(1). Gossett also claims on appeal that Czech violated certain conditions and specified procedures contained in the regulations implementing this statute. *See* 38 C.F.R. §§ 13.58, 13.71. We affirm and hold that 38 U.S.C. § 5301(a)(1), when read in combination with pertinent regulations such as 38 C.F.R. § 13.71, does not prohibit direct payments of VA benefits to a state hospital for ongoing veteran patient care.

## FACTUAL AND PROCEDURAL BACKGROUND

Paul Gossett is a military veteran who is entitled to receive VA benefits. In 1982, Gossett was found not guilty of murder by reason of insanity and was committed to a state psychiatric hospital by court order. Gossett was transferred to the Hospital, where he is currently detained, in September of 1996.

In 1997, the VA found Gossett mentally incompetent to manage his own affairs. The VA appointed Czech to serve as Gossett's legal custodian and entered into a fiduciary agreement providing that the Hospital would be reimbursed from VA benefits for the costs it incurs as a result of Gossett's care. Since the agreement has been in effect, Czech has been using Gossett's VA funds to provide Gossett a monthly stipend for

groceries and sundries and to partially reimburse the Hospital for the costs of Gossett's care.

On July 15, 2004, Gossett brought this action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of California, claiming that Czech's use of his VA benefits to reimburse the Hospital was unlawful under various federal and statutory laws.[1] The Complaint sought to "permanently enjoin the said state hospitals and their personnel from any future misappropriation of funds, to seek punitive damages, declaratory relief, and any other relief that is just, equitable and proper." Czech moved for summary judgment, claiming that he used Gossett's funds "in a manner authorized and required by federal and state law, in particular 38 C.F.R. section 13.71 and by California Health and Welfare Code section 7275, as well as by Departmental policy," and that his actions were proper under *Washington State Department of Social and Health Services v. Keffeler*, 537 U.S. 371 (2003), a case involving state use of Social Security (SS) benefits as reimbursement for costs incurred in caring for eligible foster children.

The district court granted Czech's motion for summary judgment and dismissed Gossett's claim. The court extended the logic of the Supreme Court's *Keffeler* ruling to veterans' benefits, and held that a "representative payee's" use of VA funds for support of the beneficiary does not violate Section 5301(a)(1). Gossett appeals.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo*. *See Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007).

---

[1]The Complaint also named "Trust Officer of Patton State Hospital" as a defendant. Defendant "Trust Officer of Patton State Hospital" was never successfully served, and was dismissed from the suit for lack of service. *See* Fed. R. Civ. P. 4(m).

## DISCUSSION

### I

**[1]** The Veterans' Benefits Act (VBA), Pub. L. No. 85-56, 71 Stat. 83 (1957) (codified as amended at 38 U.S.C. § 301 *et seq.*), contains a provision that limits the availability of VA benefits for the payment of certain types of claims:

> Payment of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301(a)(1). This exemption provision protects the veteran recipient of the benefits and affords security for his or her family. The VBA also dictates the manner in which payments of VA benefits are made to fiduciaries, allowing that "payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary." 38 U.S.C. § 5502(a)(1). Here, Gossett brings a Section 1983 action, claiming that defendant Czech, his legal custodian authorized to receive and administer his veterans' benefits, has been using part of his benefits to reimburse the Hospital for Gossett's care and maintenance in violation of 38 U.S.C. § 5301(a)(1).[2]

---

[2]In Gossett's Opening Brief, prepared pro se, he argues that the district court's holding that Czech's actions did not violate 38 U.S.C. § 5301 should be reversed because 1) the psychiatric services he is receiving are fraudulent, 2) he is not incompetent to manage his own affairs, 3) he was uninformed of the consequences of his state court insanity plea, 4) he has

## A

The district court granted summary judgment for the defendant in this case, basing its holding on the Supreme Court's decision in *Keffeler*. 537 U.S. 371 (2003). In *Keffeler*, the State of Washington was appointed to serve as the representative payee for foster care children receiving SS benefits. *Id.* at 379. Washington then used the SS benefits to reimburse itself for the cost of foster care. *Id.* at 378-79. The plaintiffs alleged that the State's use of their benefits violated 42 U.S.C. § 407(a), the "antiattachment" provision contained in the Social Security Act (SSA), 49 Stat. 620 (1935), codified as amended, 42 U.S.C. § 301 *et seq.*[3] *Id.* at 375. The Court, however, found that the State's use of plaintiffs' SS benefits did not amount to an "execution, levy, attachment, [or] garnishment" within the meaning of Section 407(a). *Id.* at 382-83. The Court further held that the State's reimbursement scheme did not fit within the meaning of "other legal process," and thus did not violate Section 407(a). *Id.* at 383-86.

In addition, the Court specifically noted that the State,

---

been denied meaningful access to the courts to win his release, and 5) his veterans benefits payments are not being properly monitored and he has not received a proper accounting. None of these arguments was properly raised before the trial court or is relevant to Gossett's claims of statutory violation. Amicus in this case, O'Melveny and Myers LLP and UCLA School of Law Ninth Circuit Clinic, has submitted a brief in support of Gossett's position. We refer to the amicus brief's arguments throughout this opinion.

[3]Section 407(a) reads:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

much like a parent or legal guardian, was "under a legal obligation to support" the "basic needs" of its foster children, irrespective of whether those children were eligible for SS benefits or whether such funds could be used as reimbursement. *See Keffeler*, 537 U.S. at 388 n.11. Similarly, in serving as the Commissioner-appointed "representative payee" for the foster children's SS benefits, the State was charged with acting in their interests. *See id.* at 376, 388-89. The Court in *Keffeler* concluded that Section 407(a) did not apply to the State in this context, because just as a parent "ha[s] no obligation to exhaust his personal finances in providing for [his child's] support before spending any of [the child's] social security benefits on the child's maintenance[,]" neither did the State have such an obligation to exhaust its own funds first. *See id.* at 388-89 & n.11 (internal quotation marks omitted).

The district court in this case held, and defendant here argues, that because of the similarity between the SSA and the VBA, "the *Keffeler* holding should be extended to Veteran's Benefits and Section 5301, meaning that a representative payee's use of the funds for support of the beneficiary does not violate Section 5301."

**[2]** We observe that *Keffeler* does not directly control this case, as there are significant differences between the antiattachment provision for SS benefits analyzed by *Keffeler*, 42 U.S.C. § 407(a), and the VA benefits counterpart, 38 U.S.C. § 5301(a)(1). We acknowledged similarities between these two statutory sections in *Nelson v. Heiss*, 271 F.3d 891 (9th Cir. 2001), but we also noted that the language of the two sections "is somewhat different . . . ." *Id.* at 895. While those differences did not affect our decision in *Nelson*, *see id.* at 894-95 (concluding that VA benefits recipients, like SS benefits recipients, cannot consent in advance to an assignment of future funds), the differences are significant in this case. Specifically, Section 5301(a)(1), unlike Section 407(a), expressly exempts veterans' benefits from the "claim of creditors." In addition, Section 407(a) protects SS benefits only from "exe-

cution, levy, attachment, garnishment, or other legal process," while Section 5301(a)(1) provides that VA benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever[.]" Thus, the VBA creates a significantly broader preclusion than the corresponding section in the SSA, which the Supreme Court has construed narrowly as addressing only judicial means of attachment. *See Keffeler*, 537 U.S. at 383-86.

**[3]** Nevertheless, *Keffeler* provides important guidance concerning the principles that should apply when determining whether Czech's use of Gossett's funds violates federal law. Specifically, in *Keffeler*, the Court focused on the fact that the Commissioner of Social Security's implementing regulations construe the SSA as authorizing the appointment of custodial institutions like the Washington State Department of Social and Health Services as a "representative payee" for the foster care children in the State of Washington who are eligible for SS benefits. *See* 537 U.S. at 376, 384 n.7. *Keffeler* thus emphasized both "the cardinal rule that a statute is to be read as a whole" and the deference and respect that federal courts owe to implementing regulations and other administrative interpretations. *See id.* at 382, 383 n.6, 384 n.7, 385 (internal quotation marks omitted).

**B**

The parties in this case devote substantial attention to the issue of whether Czech acts as a creditor within the meaning of 38 U.S.C. § 5301(a)(1) when he uses Gossett's VA benefits to reimburse the Hospital in part for the costs of Gossett's institutional care. Over the years, numerous jurisdictions have interpreted Section 5301(a)(1) not to prohibit such action, distinguishing a state's use of an incompetent veteran's benefits to help pay for that veteran's subsistence, which the state is obligated to provide irrespective of reimbursement, from more traditional debt-collecting activities. *See Dep't of Health & Rehabilitative Servs., State of Fla. v. Davis*, 616 F.2d 828,

830-32 (5th Cir. 1980); *Savoid v. Dist. of Columbia*, 288 F.2d 851, 852 (D.C. Cir. 1961); *State ex rel. E. State Hosp. v. Beard*, 600 P.2d 324, 325-26 (Okla. 1979); *Cruce v. Ark. State Hosp.*, 409 S.W.2d 342, 347-49 (Ark. 1966); *State of Me. v. Bean*, 195 A.2d 68, 70-72 (Me. 1963); *Dep't of Pub. Welfare v. Sevcik*, 164 N.E.2d 10, 11-12 (Ill. 1960); *State Dep't of Pub. Welfare v. Baker* (*In re Guardianship of Bemowski*), 88 N.W.2d 22, 23-28 (Wis. 1958); *Dep't of Mental Hygiene v. Bayly (In re Bayly's Estate)*, 212 P.2d 587, 589-91 (Cal. App. 1949); *In re Simpson*, 61 N.Y.S.2d 529, 529-30 (N.Y. App. Div. 1946); *Gundry v. Wiarda* (*In re Lewis' Estate*), 283 N.W. 21, 22-24 (Mich. 1938).

The Supreme Court of Michigan explained that in considering the situation of a state institution being reimbursed with a patient's VA benefits the court is not concerned with "actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance." *In re Lewis' Estate*, 283 N.W. at 24. The court further indicated that "[t]he state, under humanitarian legislation, has assumed the care and maintenance of the insane pension beneficiary and, by statute, has provided means and measures for reimbursement and we do not think that, under such circumstances, Congress intended to consider the state in the class of barred creditors." *Id.*

The Supreme Court of Oklahoma held that the state "is attributed a special status in that it has provided the very support for which the veteran's benefits were intended, and in that it had no choice but to accept this veteran and provided the necessary support. . . . [The state is] engaged in a governmental function and could not, as a private individual or institution might, refuse services prior to payment." *Beard*, 600 P.2d at 326.

The Supreme Court of Wisconsin also concluded, in 1958, that because there was a long line of cases permitting reim-

bursement to the states, and Congress had not made any changes to the statute to clarify that this exception did not exist, it should be "interpret[ed] . . . as indicating tacit approval by Congress of the construction placed upon [the exemption statute] by such state court decisions." *In re Bemowski*, 88 N.W.2d at 27.

The two federal cases addressing the issue reached similar results. First, in *Savoid*, the D.C. Circuit held that the District of Columbia was entitled to reimbursement for the actual cost of the maintenance of an incompetent veteran. The court held that "[a]s an instrumentality of Government, the District is not a voluntary 'creditor.' It had not, unlike a private institution or an individual citizen, extended credit to the veteran." 288 F.2d at 852. The court found that because the District was not a "creditor" in these circumstances, the District was not barred by the statute from securing reimbursement. *Id.* In *Davis*, the Fifth Circuit held that the exemption status did not preclude the Florida Department of Health and Rehabilitative Services from recovering reimbursement for past care and maintenance provided to an incompetent veteran. 616 F.2d at 832. The Fifth Circuit panel found that "[t]he veteran's benefits exemption has been held inapplicable where a state sought reimbursement for the expenses of continuous hospitalization of a mentally ill dependant of a veteran where the dependants's entire estate consisted of monthly pension payments received by a guardian." *Id.* at 831.

[4] No case within the Ninth Circuit has held similarly, and we find it unnecessary to determine in this case whether the Hospital is a "creditor" for purposes of 38 U.S.C. § 5301(a)(1) when determining whether Czech's reimbursement of the Hospital violates federal law. We acknowledge that our decision in *Nelson* contains dicta questioning the conclusion reached by this line of extra-jurisdictional case law. 271 F.3d at 896. We do not today rule on the propriety of the holdings in these cases but merely observe that they support a conclusion that 38 U.S.C. § 5301(a)(1) is ambiguous with

respect to public medical institutions seeking reimbursement for veteran care. Because we conclude that Section 5301(a)(1) is ambiguous regarding whether it permits VA benefits to be used to reimburse custodial institutions for the costs of caring for incompetent veterans like Gossett, we proceed to analyze the VA's corresponding implementing regulations, as urged by *Keffeler*.

## C

**[5]** Pursuant to the VBA's implementing regulations, the VA may select and appoint a person best suited to receive VA benefits in a fiduciary capacity for a beneficiary who is incompetent. 38 C.F.R. § 13.55(a) ("The Veterans Service Center Manager [VSCM] is authorized to select and appoint . . . the person or legal entity best suited to receive Department of Veterans Affairs benefits in a fiduciary capacity for a beneficiary who is mentally ill (incompetent) or under legal disability . . . ."). Disbursal of benefits to this fiduciary is subject to the condition that he or she use the benefits for the beneficiary's "best interests." 38 C.F.R. § 13.58(b)(2)(i).

**[6]** Further, VA regulations provide a specific method under which a state medical institution may obtain some portion of a veteran's benefits to pay for the costs of his or her care and maintenance. First, Section 13.61 indicates that the VSCM "may authorize the payment of all or part of the pension . . . to the chief officer of the institution wherein the veteran is being furnished hospital treatment or institutional . . . care[.]"[4] Second, Section 13.71 indicates that payment of part

---

[4]In its entirety, Section 13.61 reads:

The Veterans Service Center Manager may authorize the payment of all or part of the pension, compensation or emergency officers' retirement pay payable in behalf of a veteran rated incompetent by the Department of Veterans Affairs to the chief officer of the institution wherein the veteran is being furnished hospital treatment or institutional, nursing or domiciliary care, for

of a veteran's benefits may be paid to a state hospital when the veteran has been "rated incompetent by the Department of Veterans Affairs[,]" when "[i]t has been determined the veteran is legally liable for the cost of his or her maintenance," and when the institution's representative "probably will assert a claim for full maintenance costs." 38 C.F.R. § 13.71(a)(1)-(3).[5] This regulation imposes further conditions upon the pay-

_____

the veteran's use and benefit, when the Veterans Service Center Manager has determined such payment (called an institutional award) will adequately provide for the needs of the veteran and obviate need for appointment of another type of fiduciary.

38 C.F.R. § 13.61.

[5]Section 13.71 regulates payment of VA benefits to an institution (such as the Hospital):

(a) The payment of part of compensation, pension or emergency officers' retirement pay for the cost of a veteran's hospital treatment, institutional or domiciliary care in an institution operated by a political subdivision of the United States may be authorized as provided in paragraph (b) of this section when:

(1) The veteran is rated incompetent by the Department of Veterans Affairs.

(2) It has been determined the veteran is legally liable for the cost of his or her maintenance, and

(3) The institution's representative has asserted or probably will assert a claim for full maintenance costs.

(b) Subject to these conditions and the further condition that the responsible official of the institution or political subdivision will agree not to assert against Department of Veterans Affairs benefits any further claim for maintenance during the veteran's lifetime, the Veterans Service Center Manager may agree with such official to the payment of the veteran's benefits through an institutional award to be applied to:

(1) A monthly amount determined by the Veterans Service Center Manager to be needed for the veteran's personal use,

(2) An amount to be agreed upon to be accumulated to provide for the veteran's rehabilitation upon release from the institution, and

ment of the benefits, including that the director of the institution agree "not to assert against [VA] benefits any further claim for maintenance during the veteran's lifetime." 38 C.F.R. § 13.71(b).

[7] Section 13.71 of Title 38 of the Code of Federal Regulations was promulgated on November 21, 1975, after the majority of the "state is not a creditor" cases discussed above were decided. 40 Fed. Reg. 54,248 (Nov. 21, 1975). Particularly in light of this historical backdrop, the promulgation of Section 13.71, which specifically contemplates a fiduciary's use of VA benefits to pay for the cost "of a veteran's hospital treatment," 38 C.F.R. § 13.71(a), supports the conclusion that the creditor exemption in 38 U.S.C. § 5301(a)(1) is inapplicable to a state hospital that reimburses itself for the care and maintenance of an incompetent veteran. If VA benefits could not lawfully be used to reimburse a state hospital for a veteran ward's care, then 38 C.F.R. § 13.71, which explains the procedures for such a reimbursement to occur, would be rendered meaningless. This construction would run afoul of the basic tenet of statutory and regulatory interpretation which counsels that a statute should not be read to render its implementing regulations meaningless. *See Oregon Natural Resources Council v. Allen,* 476 F.3d 1031, 1040-41 (9th Cir. 2007).

[8] As urged by the Supreme Court in *Keffeler*, we resolve an ambiguity in the VBA exemption provision by construing

---

(3) So much of the amount of the benefit as remains not exceeding the amount the Veterans Service Center Manager determines to be the proper charge as fixed by statute or administrative regulation, to the cost of the veteran's maintenance.

(c) Upon execution of an agreement as provided in paragraph (b) of this section, the Veterans Service Center Manager will certify the total amount to be released to the chief officer of the institution.

this statutory section and its implementing regulations as a whole and deferring to the VA's reasonable interpretation. *See* 537 U.S. at 382, 383 n.6, 384 n. 7, 385. In so doing, we hold that 38 U.S.C. § 5301(a)(1), when read in conjunction with pertinent regulations such as 38 C.F.R. § 13.71, does not prohibit direct payments of VA benefits to the Hospital for Gossett's ongoing care.[6] We affirm the district court's grant of summary judgment on this claim.[7]

## D

Gossett also alleges, with the help of amicus in this case, that Czech has violated the requirements of Section 13.58 and Section 13.71 of Title 38 of the Code of Federal Regulations, and thus, that summary judgment should be denied. Gossett claims that there remains a material issue of fact regarding whether Czech has met the specific conditions outlined in Section 13.71 that must be met before an incompetent veteran's benefits may be used to pay for institutional care.

We find that Gossett has waived his claims for violations of Sections 13.58 and 13.71. Gossett did not raise these claims in his complaint, nor did he raise them before the district court. Further, fiduciaries charged with oversight of VA pension benefits are subject to the VA's supervisory authority, which includes the ability to investigate claims of malfeasance and to take appropriate action. *See* 38 U.S.C. § 5502(b); 38 C.F.R. § 13.100. Gossett has not shown that the administrative remedy provided by 38 C.F.R. § 13.100(c) is no longer available to him, and prudential considerations on balance

---

[6]We note that our holding in *Nelson v. Heiss* is unaltered. If the reimbursements Czech made to the Hospital with Gossett's benefits had been made in pursuit of debt collection activities, they would still be prohibited by Section 5301(a)(1). *See* 271 F.3d at 894-96.

[7]Because we conclude that no violation of federal law has occurred, and thus neither monetary damages nor injunctive relief are appropriate, we do not address defendant Czech's qualified immunity defense.

favor exhaustion of this remedy prior to filing suit in federal court. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Moreover, if Gossett still wishes to pursue such a claim after exhausting his administrative remedies, he might be required to do so in the United States Court of Appeals for Veterans Claims. *See* 38 U.S.C. §§ 511(b)(4), 7104(a), 7252(a); *see also Estates of Nau v. State of Colo.*, 183 P.3d 626, 635-36 (Colo. App. 2007); *Judkins v. Veterans Admin.*, 415 F.Supp.2d 613, 619-20 (E.D.N.C. 2005).

We thus do not reach the issue of whether Czech has met the conditions and requirements of Section 13.58 and Section 13.71.

## II

**[9]** In his Complaint, Gossett also alleges violations of the Civil Rights of Institutionalized Persons Act, Pub. L. No. 96-247, 94 Stat. 349 (1980) (codified as amended at 42 U.S.C. §§ 1997-1997j), the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 *et seq*.), and the Rehabilitation Act of 1973, Pub.L. No. 93-112, 87 Stat. 355 (codified as amended at 29 U.S.C. § 701 *et seq*). The district court granted summary judgment to Czech on these claims, holding that Gossett did not produce evidence showing a genuine issue of triable fact. Gossett has not identified any such evidence on appeal either, and we thus affirm the district court's summary judgment order in favor of Czech on Gossett's alleged causes of action for discrimination.

### *CONCLUSION*

We hold that 38 U.S.C. § 5301(a)(1) does not prohibit the direct payment of an incompetent inmate's VA benefits to a state hospital for ongoing patient care. While we recognize the importance of shielding VA benefits from the claims of creditors, we also recognize that the purpose of those benefits

is to provide for the care and maintenance of veterans. *See Lawrence v. Shaw*, 300 U.S. 245, 250 (1937). We believe that our holding today is consistent with this legislative goal but also prevents the somewhat perverse result of taxpayers "picking up the bill" twice for the care of an incompetent veteran. *See Crawford v. Gould*, 56 F.3d 1162, 1169 (9th Cir. 1995) (Trott, J., concurring).

**AFFIRMED.**