**NOT FOR PUBLICATION [August 31, 2010]**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ED STRICKLAND; NORTHLAKE MARINE WORKS, a Washington corporation, <br><br>     Plaintiffs - Appellants, <br><br>  v. <br><br> CITY OF SEATTLE, <br><br>     Defendant - Appellee. | No. 09-35890 <br><br> D.C. No. 2:08-cv-00454-RSM <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted June 10, 2010
Seattle, Washington

Before: CANBY, CALLAHAN and IKUTA, Circuit Judges.

 Ed Strickland, the owner of Northlake Marine Works, appeals the district

court's grant of summary judgment to the City of Seattle ("the City") on his claim

---

   *  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

that the City violated his First Amendment rights.[1] Strickland alleges that the City unconstitutionally compelled him to speak and to associate himself with the City's "message" when it required him to distribute to his tenants a Best Management Practices Plan ("BMP Plan") in order to obtain a permit to modify the structure of the marina. He also alleges that the City engaged in content and viewpoint discrimination when it refused to approve a version of the BMP Plan that accused the City of dumping sewage into Lake Union.

We review the grant or denial of summary judgment de novo, *Gossett v. Czech*, 581 F.3d 891, 893 (9th Cir. 2009), and we may affirm on any ground supported by the record. *United States v. Dunifer*, 219 F.3d 1004, 1006 (9th Cir. 2000).

The City's requirement that permit applicants draft and disseminate plans setting forth practices which marina tenants must follow to keep the marina free of pollutants does not abridge Strickland's First Amendment rights. *Cf. Envtl. Def. Ctr. v. United States*, 344 F.3d 832, 848-49 (9th Cir. 2003). The BMP plan does not "dictate a specific message." *Id.* at 849. Moreover, the City's requirement that such a plan be disseminated to the marina tenants is legitimate and consistent with the regulatory goals of the Washington Shoreline Management Act of 1971 and the

---

[1] Appellants are referred to collectively as "Strickland."

2

City's shoreline master program, neither of which Strickland challenges as unconstitutional. Accordingly, we find Strickland's compelled speech claims unpersuasive.

We also find unpersuasive Strickland's arguments that City unconstitutionally required "its message," as conveyed in the BMP plan, to be attributed to him. Again, the plan does not convey a "specific message," as it simply sets forth requirements that marina tenants are advised to follow in order to keep the marina free of pollutants. Strickland has not shown that the City would have disapproved a version of the BMP plan that explained its dissemination was required by the City and otherwise disclaimed attribution.

Finally, we conclude that Strickland's censorship claim fails for two reasons. First, to the extent that the City-approved BMP plan conveys the City's endorsement of specific practices, it is government speech and "exempt from First Amendment scrutiny." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005). *See also Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1131 (2009) (noting that "[t]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech").

Second, to the extent that Strickland asserts a private-speech censorship claim, it fails because he has not shown that the City, has, in fact, restricted what

3

he may say or may not say to his tenants.  *Cf. Consol. Edison Co. v. Pub. Serv. Corp.*, 447 U.S. 530, 532-33 (1980) (finding unconstitutional a rule promulgated by a public utilities commission which prohibited public utility companies from including with their monthly bills documents that discussed controversial issues of public policy).  Moreover, unlike the "envelope space" in *Consolidated Edison*, the BMP plan is not a modality for private speech.  Rather, both parties agree that the BMP plan must undergo government approval, and that the City has a duty to "sign off" on BMP plans that are submitted as part of a permit application.  This is part and parcel of the City's duty to ensure compliance with, and to further the goals of, Washington's Shoreline Management Act.  *See* RCW §§ 90.58.080, 90.58.200. Accordingly, the City's duty to approve BMP plans in the course of the permitting process reflects an element of governmental responsibility for the "speech" that was not present in *Consolidated Edison.*

In light of such responsibility, the City's interest in refusing to put its imprimatur on any plan that contains information that is not relevant to the permit requirements is substantial, and Strickland has not shown that the City otherwise seeks to limit his ability to convey whatever message he wishes to his tenants when disseminating the BMP Plan.  Indeed, the City concedes that he could handwrite his messages onto the version he disseminates or even staple a cover sheet to the

4

BMP plan setting forth his view of the permitting process and any other matter he wishes to discuss.[2]

Because the City has not engaged in any official action that restricts what Strickland may say in conveying the BMP plan to his tenants, we conclude that there has been no actionable government restriction on his speech, and that, therefore, Strickland cannot maintain a First Amendment claim for content or viewpoint discrimination.

**AFFIRMED.**

---

[2] Strickland contends that the existence of "other places or means of communication are irrelevant" to the First Amendment analysis, but none of the cases he cites for that proposition apply here, as each case either involves the limitation of speech in a public forum or regulations aimed at restricting particular speech. *Cf. Schneider v. State*, 308 U.S. 147, 163 (1939); *Reno v. ACLU*, 521 U.S. 844 (1997); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 75 (1983); *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 556 (1975); *Thornhill v. Alabama*, 310 U.S. 88, 105 (1940). The parties agree that the permit application is not a public forum and the City's duty to review and approve BMP plans in issuing construction permits is not aimed at restricting speech. Indeed, expressive speech is irrelevant to the permit application.

*Strickland v. City of Seattle*, No. 09-35890

IKUTA, J., dissenting.

The central question raised by this appeal is whether the City can deny Strickland a development permit solely because the City does not like the political commentary that Strickland included in his BMP plan.

According to the Supreme Court, the answer to this question is no. In *Consolidated Edison Co. v. Public Service Commission* (*Con Ed*), New York City told Con Ed, a regulated utility, that it could not include political statements in its official billing envelope. 447 U.S. 530, 532 (1980). The Court struck down New York's order because it was content-based censorship, *id.* at 537, that could not withstand strict scrutiny, and therefore violated Con Ed's First Amendment rights, *id.* at 544.

According to the majority, the City's censorship passes constitutional muster in this case because the City's control over the content of the BMP plan makes it "government speech" that can be regulated without First Amendment scrutiny. But Strickland is the author of the BMP plan, not the City, and a government agency cannot "restrict the free expression of a private party" unless the agency owns the property where the speech is made or is speaking itself, regardless of how much regulatory control the agency has over the private party's actions. *See Con Ed*, 447 U.S. at 539–40 & n 1; *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th

Cir. 2000).  Thus, the majority's reliance on *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005) and *Pleasant Grove City v. Summum*, 129 S.Ct. 1125, 1133 (2009), which involved direct government speech and control over government property, respectively, is to no avail.

The majority also claims that Strickland's censorship claim fails because Strickland could express his political views in a different way.  Maj. Op. at 4–5.  But the Supreme Court has "consistently rejected the suggestion that a government may justify a content-based prohibition by showing that speakers have alternative means of expression."  *Con Ed*, 447 U.S. at 541 n.10.

It is well established that "the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech."  *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 210 (2003) (ellipsis and internal quotation marks omitted).  In direct contradiction to this principle, the City denied Strickland a development permit until he agreed to curtail his First Amendment rights and remove his political commentary from the BMP plan.  Therefore, I respectfully dissent.