[No. 42085-6-II.    Division Two.    August 28, 2012.]

*In the Matter of the Estate of* WAYNE LEROY MCPHERSON.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,*
v. DIANA MARIE CALL, *as Personal Representative,*
*Appellant.*

*Hari L. Alipuria*, for appellant.

*Robert M. McKenna, Attorney General*, and *Joseph Christy, Jr., Assistant*, for respondent.

¶1  JOHANSON, A.C.J. — Federal law does not exempt from creditor claims a beneficiary's cash assets derived from Social Security and veterans' benefits after the beneficiary's death. Accordingly, in this case of first impression in Washington, we affirm the trial court's finding that Wayne McPherson's cash assets derived from Social Security and veterans' benefit payments are no longer shielded, under 38 U.S.C. § 5301 and 42 U.S.C. § 407(a), from creditor claims after his death. Also, McPherson's home is not exempt from creditors because neither he nor any of his dependents reside in it.

## FACTS

¶2  Between March and April 1996, and again from May 1996 through December 2004, McPherson was involuntarily committed to Western State Hospital (WSH), a facility operated by Washington's Department of Social and Health Services (DSHS). After McPherson's June 2007 death, DSHS determined that his estate owed DSHS $325,590.13.

¶3 At the time he was committed to WSH, McPherson owned real property in Tacoma, and he received monthly income from various sources, including United States Veterans' Administration (VA) benefits; Social Security Administration pension payments; promissory note payments; and dividends from an Alaskan Native Corporation, Cook Island Region Inc. Upon his death, McPherson had accrued roughly $110,000 in cash assets, derived largely from his Social Security and VA payments. He did not leave a spouse or dependents.

¶4 Diana Call is the personal representative of McPherson's estate[1] and, in February 2008, she filed and served a notice to creditors, giving creditors 30 days to file claims against McPherson's estate. DSHS timely filed its claim for $325,590.13. Call rejected DSHS's claim.

¶5 Following Call's rejection of DSHS's claim, in July 2008, DSHS filed suit in Pierce County Superior Court. In response to DSHS's motion for summary judgment on the validity of its creditor claim, Call asserted that DSHS could not initiate a creditor claim against McPherson's estate because his assets derived from Social Security and VA benefits were exempt from creditors under federal law. The trial court granted DSHS's motion for summary judgment, finding that Call improperly denied DSHS's properly filed creditor's claim for $325,590.13. As part of its order on DSHS's motion for summary judgment, the trial court also found that "estate funds deposited with the Court, and any interest accrued on those funds, lost their statutory immunity against creditor claims upon the Decedent's death." Clerk's Papers at 200. The trial court further found that McPherson's real property was not statutorily immune from creditors. Call now appeals the trial court's grant of summary judgment in DSHS's favor, challenging the trial court's legal conclusion that McPherson's assets lost their exempt status upon his death.

---

[1] Call is also McPherson's daughter.

## ANALYSIS

### I. Creditor Claims against Social Security and Veterans Payments

¶6 Call argues that the trial court erred in determining that DSHS may seize McPherson's cash assets originally obtained as Social Security and VA payments. But federal law does not preclude DSHS from collecting from McPherson's estate because the federal exemption statutes do not exempt a beneficiary's assets from creditors after the beneficiary's death.

### A. Exemption Statutes

¶7 Congress created an exemption prohibiting creditors from attaching veterans' benefits; that exemption is currently codified at 38 U.S.C. § 5301:[2]

> (a)(1) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . .

---

[2] 38 U.S.C. § 5301 evolved from former 38 U.S.C. § 454, the World War Veterans' Act of 1924. *United States v. Griffith*, 584 F.3d 1004, 1019-20 (10th Cir. 2009). Former 38 U.S.C. § 454 (1924) provided, "The compensation, insurance, and maintenance and support allowance payable [to veterans] shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made . . . ; and shall be exempt from all taxation." In 1935, Congress replaced former 38 U.S.C. § 454 with 38 U.S.C. § 454a, mandating that veterans' benefits were to remain exempt " ' "either before or after receipt by the beneficiary" ' " and that the benefits' exempt status " 'should not extend "to any property purchased in part or wholly out of such payments." ' " *Griffith*, 584 F.3d at 1020 (quoting *Lawrence v. Shaw*, 300 U.S. 245, 249, 57 S. Ct. 443, 81 L. Ed. 623 (1937) (quoting former 38 U.S.C. § 454a (1935))). Then, in 1958 Congress amended the statute again, codifying the relevant section at former 38 U.S.C. § 3101 in nearly the identical form it is found today. *Griffith*, 584 F.3d at 1020. In 1991, Congress renumbered the statute as 38 U.S.C. § 5301. *Griffith*, 584 F.3d at 1020.

. . . .

(3)(A) This paragraph is intended to clarify that, in any case where a beneficiary entitled to compensation, pension, or dependency and indemnity compensation enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit by payment of such compensation, pension, or dependency and indemnity compensation . . . and including deposit into a joint account from which such other person may make withdrawals, or otherwise, such agreement shall be deemed to be an assignment and is prohibited.

This exemption provision protects the veteran recipients of the benefits and affords security to their families. *Gossett v. Czech*, 581 F.3d 891, 894 (9th Cir. 2009).

¶8 And in the Social Security Act,[3] Congress authorized appropriations for the purpose of "furnish[ing] financial assistance to aged needy individuals." 42 U.S.C. § 301. Subchapter II of the Social Security Act, which sets out the "Federal Old-Age, Survivors, and Disability Insurance Benefits," protects Social Security recipients from creditors:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). This provision is designed "to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso v. New York*, 898 F.2d 322, 327 (2d Cir. 1990).

## B. Analysis

¶9 Washington courts have never analyzed whether these federal statutory exemptions apply to beneficiaries'

---

[3] 42 U.S.C. ch. 7.

assets after the beneficiaries' deaths.[4] But long-standing case law from other jurisdictions demonstrates that creditors may seize once-exempt assets after a beneficiary's death. For instance, in *Pagel v. Pagel*, a soldier obtained a $10,000 insurance policy and designated his father as the beneficiary. 291 U.S. 473, 474, 54 S. Ct. 497, 78 L. Ed. 921 (1934). The soldier preceded his father in death, and the father collected the insurance until his own death three years later. *Pagel*, 291 U.S. at 474. After the father's death, the government paid the remainder of the insurance policy to the insured's estate. *Pagel*, 291 U.S. at 474. Creditors sought payment from the insured's estate, and lower courts allowed creditors to seize the estate's funds, finding they were no longer protected from creditor exemption under former 38 U.S.C. § 454 (1924), after the insured and beneficiary both died. *Pagel*, 291 U.S. at 474. The Supreme Court affirmed, holding that the purpose of the federal exemption "is to safeguard to the insured soldier and the beneficiary payments made under the policy to them or *for their benefit.*" *Pagel*, 291 U.S. at 476 (emphasis added). " '[I]t cannot be held now that exemption of the fund survives both insured and beneficiary for benefit of the heirs of the former.' " *Pagel*, 291 U.S. at 476 (quoting *In re Estate of Hallbom*, 189 Minn. 383, 388, 249 N.W. 417 (1933), *aff'd sub nom. Pagel*, 291 U.S. 473).

¶10 Other courts have also held that federal protection from creditor claims ceases upon the beneficiary's death. *See State v. Monaco*, 81 N.J. Super. 448, 451, 195 A.2d 910 (1963) ("This court concludes that these [veterans'] pension funds [in the estate's savings account] lose their identity as

---

[4] Call cites two cases examining Washington law, *Wash. State Dep't of Soc. & Health Servs. v. Keffeler*, 537 U.S. 371, 382, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003), and *Kolbeson v. Dep't of Soc. & Health Servs.*, 129 Wn. App. 194, 118 P.3d 901 (2005), that both address whether federal exemption statutes protect a beneficiary's assets from a state creditor, DSHS. But, both are distinguishable from the present matter because they involved living beneficiaries. Neither case examines the interplay between Washington's reimbursement statute and federal exemption statutes or provides guidance in determining whether DSHS could seize McPherson's funds after his death.

pension moneys on the death of the veteran and that the exemption of such moneys [under former 38 U.S.C. § 3101(a) (1958)] from the claims of creditors is thereupon lost."); *In re Estate of Buxton*, 246 Wis. 97, 101, 16 N.W.2d 399 (1944) ("To extend this exemption [under former 38 U.S.C. § 454a (1935)] to the [veteran's estate] is to extend it to the heirs or legatees, and if this is done it is difficult, if not impossible, to determine when and where the exemption would cease. An unambiguous statute will not be enlarged by inference or construction."); *In re Fox's Estate*, 62 S.D. 586, 255 N.W. 565 (1934) (holding that war risk insurance money paid to a designated beneficiary's estate not exempt under former 38 U.S.C. § 454 (1924), from claims of beneficiary's creditors).

¶11 Call argues that because these cases from other jurisdictions predate 38 U.S.C. § 5301, their rules do not apply here. But as outlined in *United States v. Griffith*, 38 U.S.C. § 5301 traces directly to former 38 U.S.C. § 3101 (1958), and even further back, to former 38 U.S.C. § 454 (1924).[5] 584 F.3d 1004, 1019-20 (10th Cir. 2009). Therefore, applying current 38 U.S.C. § 5301, we reach the same conclusions that earlier courts reached in applying former 38 U.S.C. § 454 (1924), former 38 U.S.C. § 454a (1935), and former 38 U.S.C. § 3101 (1958). And as courts have already held that federal exemptions on veterans' benefits do not continue to a beneficiary's estate after the beneficiary's death under former 38 U.S.C. § 454 (1924), former 38 U.S.C. § 454a (1935), and former 38 U.S.C. § 3101 (1958), those exemptions do not continue to the beneficiary's estate under 38 U.S.C. § 5301. *See Monaco*, 81 N.J. Super. at 451 (applying former 38 U.S.C. § 3101 (1958)); *Estate of Buxton*, 246 Wis. at 101 (applying former 38 U.S.C. § 454a (1935)).

¶12 As Congress designed these exemptions for the benefit of the beneficiary and dependents, they do not apply to McPherson's estate because McPherson is no longer

---

[5] See *supra* note 2.

living and he left no dependents.[6] *See Gossett*, 581 F.3d at 894 (veterans' benefits); *Fetterusso*, 898 F.2d at 327 (Social Security benefits). Therefore, McPherson's cash assets derived from VA benefits are no longer exempt from creditor claims under federal law. Similarly, as the Social Security exemption under 42 U.S.C. § 407(a) largely mirrors the VA benefit exemption—and like the VA benefit exemption, was designed to protect beneficiaries and their dependents—we hold that McPherson's cash assets derived from Social Security payments are, too, not protected from creditors after his death.[7]

## II. HOME EXEMPTION

¶13 Call also argues that McPherson's former home, purchased largely with Social Security and VA benefits, is exempt from seizure by his creditors by WAC 388-855--0035(2). But the exemption does not apply here because the home does not serve as McPherson's principal dwelling and actual residence, nor does it serve that role for a spouse or dependent children.

¶14 The Washington Administrative Code provides that certain real property assets may be excluded from a deceased's estate and exempt from seizure by creditors. It states:

> Real property shall also be an available asset to the estate: Provided, That the patient's home shall not be considered an available asset if that property is owned by the estate and serves as the principal dwelling and actual residence of the

---

[6] Call also claims that these federal exemption statutes preempt the Washington laws and administrative codes which allow DSHS to attach one's assets to repay loans. But, preemption applies only when state laws conflict with federal laws. Because the federal statutes do not exempt from creditors a beneficiary's assets after death, the federal exemption statutes do not conflict with state reimbursement laws. Therefore, preemption does not apply in this case.

[7] We do not consider the effect of any difference in nature between veteran's benefits and Social Security benefits because Call failed to preserve this issue, raising it for the first time during oral argument.

patient, the patient's spouse, and/or minor children and disabled sons or daughters: Provided further, That if the home is not being used for residential purposes by the patient, the patient's spouse, and/or minor children and disabled sons or daughters, and in the opinion of two physicians, there is no reasonable expectancy that the patient will be able to return to the home during the remainder of his life, the home shall be considered an asset available to the estate.

WAC 388-855-0035(2).

¶15 McPherson has passed away, so he no longer uses the home as his principal dwelling or actual residence. And because neither McPherson, a spouse, nor any minor or dependent children reside in his former home, WAC 388-855-0035(2) does not exempt it from creditors.

¶16 We affirm.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.