Argued and submitted November 2, 2016, affirmed June 14, petition for review denied November 9, 2017 (362 Or 175)

STATE OF OREGON,
acting by and through the
Oregon Health Authority,
*Plaintiff-Respondent,*

*v.*

Lynda S. CUE,
*Defendant-Appellant.*

Jackson County Circuit Court
13CV03100; A161253

398 P3d 467

Sarah Vaile argued the cause for appellant. With her on the brief was Robert W. Good, Attorney, LLC.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Deane Preston Cloud, a disabled veteran, spent most of the last several years of his life as a patient at the Oregon State Hospital (OSH). Cloud died in 2011, testate, but without a spouse or dependents. Following Cloud's death, the Oregon Health Authority (OHA) sought reimbursement for the costs of Cloud's care at OSH from his estate, which consists entirely of federal veterans' disability benefits paid to Cloud during his lifetime. Defendant, the personal representative of Cloud's estate, rejected OHA's claim, citing a federal statute that makes veterans' benefits "exempt from the claim of creditors." 38 USC § 5301(a)(1). This action followed. On cross-motions for summary judgment, the trial court concluded that 38 USC section 5301(a)(1) is not a bar to OHA's claim for reimbursement of the costs of care that Cloud received at OSH. The trial court therefore granted OHA's motion for summary judgment, denied defendant's motion, and entered a judgment requiring defendant to pay OHA's claim. Defendant appeals. For the reasons that follow, we affirm.

We begin with the relevant legal framework. Federal law limits the availability of veterans' benefits for payment of certain claims. Specifically, 38 USC section 5301(a)(1) provides, in part:

> "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, *shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.*"

(Emphasis added.) The purpose of the exemption in section 5301(a) is twofold: "to avoid the possibility of the Veterans' Administration * * * being placed in the position of a collection agency and to prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." *Rose v. Rose*, 481 US 619, 630, 107 S Ct 2029, 95 L Ed 2d 599 (1987) (internal quotation marks omitted); *see also Lawrence v.*

*Shaw*, 300 US 245, 250, 57 S Ct 443, 81 L Ed 623 (1937) (veterans' benefit payments "are intended primarily for the maintenance and support of the veteran"); *Gossett v. Czech*, 581 F3d 891, 894 (9th Cir 2009) (the exemption "protects the veteran recipient of the benefits and affords security for his or her family").

A different statute, 38 USC section 5502(a)(1), provides that payments of veterans' benefits "may be made directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary." Further guidance as to who may serve as a fiduciary, as well as the manner in which such payments are to be made, is found in Title 38 of the Code of Federal Regulations. In particular, 38 CFR section 13.71 provides that, subject to certain conditions, the Veterans' Administration may agree to the *direct* payment of benefits to a state hospital for the cost of a veteran's institutional care:

"(a) The payment of part of compensation, pension or emergency officers' retirement pay for the cost of a veteran's hospital treatment, institutional or domiciliary care in an institution operated by a political subdivision of the United States may be authorized as provided in paragraph (b) of this section when:

"(1) The veteran is rated incompetent by the Department of Veterans Affairs.

"(2) It has been determined the veteran is legally liable for the cost of his or her maintenance, and

"(3) The institution's representative has asserted or probably will assert a claim for full maintenance costs.

"(b) Subject to these conditions and the further condition that the responsible official of the institution or political subdivision will agree not to assert against Department of Veterans Affairs benefits any further claim for maintenance during the veteran's lifetime, the Veterans Service Center Manager may agree with such official to the payment of the veteran's benefits through an institutional award to be applied to:

"(1) A monthly amount determined by the Veterans Service Center Manager to be needed for the veteran's personal use,

"(2)   An amount to be agreed upon to be accumulated to provide for the veteran's rehabilitation upon release from the institution, and

"(3)   So much of the amount of the benefit as remains not exceeding the amount the Veterans Service Center Manager determines to be the proper charge as fixed by statute or administrative regulation, to the cost of the veteran's maintenance.

"(c)   Upon execution of an agreement as provided in paragraph (b) of this section, the Veterans Service Center Manager will certify the total amount to be released to the chief officer of the institution."

We now turn to the facts of this case, which are few and undisputed. Cloud received full disability benefits from the United States Veterans Administration (VA). For reasons not pertinent here, Cloud was adjudicated guilty except for insanity of a felony and committed to OSH, where he remained, intermittently, from 2006 through 2010. During part of that time, defendant's husband, who had befriended Cloud, served as the payee for Cloud's veterans' benefits. Eventually, a professional fiduciary replaced defendant's husband as payee and managed Cloud's finances until his death in 2011. By that time, Cloud had accumulated approximately $121,000 in veterans' benefits. Cloud's will directed that defendant or her husband serve as personal representative of his estate, and left the residue of his estate to the couple.

Cloud's will was admitted to probate and defendant was appointed personal representative of the estate. Pursuant to ORS 179.620 (providing that the decedent's estate "shall be liable for any unpaid cost of care" in a state institution), OHA submitted a claim seeking reimbursement for the costs of Cloud's care at OSH in the amount of $666,187.40. Defendant disallowed OHA's claim, and OHA brought suit.[1]

---

[1] This is the second time this case has been before us. In *Oregon Health Authority v. Cue*, 268 Or App 350, 342 P3d 98 (2014), *rev den*, 357 Or 324 (2015), we reversed and remanded the trial court's entry of summary judgment in favor of defendant, which the court had granted on the basis that OHA's claim against the estate was untimely under ORS 115.005.

On cross-motions for summary judgment, defendant argued that, because veterans' benefits are exempt "from the claim of creditors" under 38 USC section 5301(a)(1), and because Cloud's estate consisted solely of monies received from such benefits, OHA could not recover for the past costs of Cloud's care from his estate. Defendant acknowledged that, under 38 CFR section 13.71, state institutions may obtain direct payment of a veteran's benefits for the costs of the veteran's care and maintenance at the institution. Defendant contended, however, that because OHA failed to follow that procedure during Cloud's lifetime, OHA was a mere "creditor" under 38 USC section 5301(a)(1), thereby precluding its claim for reimbursement from Cloud's estate. In response, OHA argued that section 5301(a)(1) does not apply to state institutions seeking to recover for the costs of care provided to veterans generally, and especially not to claims seeking to recover such costs after the veteran's death.

The trial court concluded that section 5301(a)(1) does not preclude OHA's claim for reimbursement. The court thus denied defendant's motion, granted OHA's motion, and entered summary judgment in favor of OHA.

On appeal, defendant reprises her contention that federal law precludes a state institution from receiving reimbursement for the costs of veterans' care unless there existed a prior agreement for "direct payment" of benefits to the institution under 38 CFR section 13.71. OHA responds that the federal exemption is inapplicable to the claims of state institutions because such institutions are not "creditors" within the meaning of 38 USC section 5301(a)(1).

Although the parties' appellate arguments have framed the issue broadly, in our view, the question presented by this case is a narrow one: whether the federal veterans' benefits exemption in 38 USC section 5301(a)(1) applies to a beneficiary's assets *after the death of the beneficiary.* No reported Oregon case addresses the matter, but several decisions from other jurisdictions do.

The Washington Court of Appeals recently addressed this precise issue and, citing numerous cases from other states, concluded that section 5301(a) does not exempt

veterans' benefits from creditors' claims *after* a beneficiary's death. *In re Estate of McPherson*, 170 Wash App 411, 412, 283 P3d 1135-36, 1135 (2012). In that case, McPherson, a war veteran who received monthly veterans' benefits, was committed to a state psychiatric hospital. Upon his death, McPherson had accumulated a substantial amount in cash assets, largely comprising veterans' and social security benefits. *Id.* at 413, 283 P3d at 1136. The personal representative of McPherson's estate denied the state's claim for reimbursement of the costs of McPherson's care, asserting that the benefits were exempt from creditors under section 5301(a)(1). Citing cases from around the country, the court held that the protection in section 5301(a)(1) ceases upon the beneficiary's death. *See, e.g., State v. Monaco*, 81 NJ Super 448, 451, 195 A2d 910, 912 (1963) ("[Veterans'] pension funds lose their identity as pension moneys on the death of the veteran and * * * the exemption of such moneys from the claims of creditors is thereupon lost."); *In re Buxton's Estate*, 246 Wis 97, 16 NW 2d 399 (1944) (assets of a deceased widow of a veteran, which consisted of a veterans' pension paid to the widow's guardian, were not exempt from the state's claim for reimbursement for the costs of care of the deceased widow while confined in an insane asylum). The court concluded that, because Congress designed the exemption to benefit beneficiaries and their dependents, the exemption had no application where, as in McPherson's case, neither the beneficiary nor any dependents remained living. *Id.* at 417-18, 283 P3d at 1138.

Having conducted our own review, we, too, find ample support in the decisions of other courts for the proposition that the veterans' benefits exemption in section 5301(a)(1) does not survive the veteran. *See, e.g., In re Pierce's Estate*, 492 Pa 10, 12, 421 A2d 1065, 1066 (1980) (veterans' benefits "are for the care and maintenance of the recipient and are not designed to provide a windfall inheritance to heirs of a deceased"); *State ex rel Eastern State Hospital v. Beard*, 600 P2d 324 (Okla 1979) (funds from the estate of a deceased veteran, which were derived from veterans' benefits, were not exempt from the state's claim for the cost of maintenance of the veteran in a state mental institution prior to his death); *State Dept. of Public Welfare v. Wendt*,

94 Ohio App 440, 450-51, 116 NE 2d 30, 36 (1953) (upon the death of the pensioner, the exemption for veterans' benefits "is not extended to the protection of the heirs or next of kin of the pensioner, as against the rights of the creditors of the pensioner"); *In re Todd's Estate,* 243 Iowa 930, 54 NW 2d 521 (1952) (upon the death of a veteran's widow, unexpended accumulation of pensions became part of the widow's estate and subject to claims of creditors). *See also Matter of Vary's Estate,* 401 Mich 340, 350, 258 NW 2d 11, 15 (1977), *cert den,* 434 US 1087 (1978) (concluding that, in the context of a similar statute governing social security benefits, "[e]xemption is a protection that does not survive the individual. It is a personal protection which dies with the beneficiary."). We find those cases to be persuasive, and conclude that, where a beneficiary of veterans' benefits has died without leaving a spouse or any dependents, the purpose of the exemption in section 5301(a)(1)—to provide for the well-being of veterans and their families—no longer applies.[2]

Furthermore, and in light of the foregoing, we see no reason to conclude that, because OHA failed to employ the mechanism in 38 CFR section 13.71 to obtain direct payment of Cloud's benefits during his lifetime, OHA is precluded from recovering those benefits following Cloud's death. Similar to 38 USC section 5301(a)(1), section 13.71 as a whole, as well as the specific recovery method for the costs of a veteran's care set out therein, contemplates the existence of a living beneficiary. As defendant points out, the procedures found in section 13.71(b) appear to safeguard a veteran's benefits by ensuring that, despite their use to pay for the costs of the veteran's care at a state institution, some portion is set aside for the veteran's monthly personal use, as well as use upon the veteran's release from that institution. *See* 38 CFR § 13.71(b)(1) ("A monthly amount * * * needed for

---

[2] By contrast, the cases upon which defendant primarily relies—*Nelson v. Heiss,* 271 F3d 891 (9th Cir 2001) (holding that 38 USC section 5301(a)(1) precludes prison officials from placing a hold on an inmate's trust account that was funded with payments of veterans' disability benefits) and *Gossett v. Czech,* 581 F3d 891, 894 (9th Cir 2009) (concluding that, when read in conjunction with pertinent regulations such as 38 CFR section 13.71, 38 USC section 5301(a)(1) "does not prohibit *direct payments* of [veterans'] benefits to a state hospital *for ongoing veteran patient care*" (emphases added))—involved living beneficiaries, and therefore leave unanswered the question presented by the circumstances of this case.

the veteran's personal use[.]"), (b)(2) ("An amount * * * to be accumulated to provide for the veteran's rehabilitation upon release from the institution[.]"). Neither the procedure for recovery nor the safeguards found in that section have any application to a case where, as here, the beneficiary of the benefits is deceased. Rather, this case presents a situation in which the payee has accumulated a large sum of benefits which, in light of the veteran's death, will never be used for his care and maintenance *unless* it is turned over to the state to reimburse the state for past expenses incurred in providing such care. Allowing recovery under such circumstances is consonant with the goals of the veterans' benefits statute, and ensures that funds allocated for the care and maintenance of veterans are, in fact, used for that purpose. *See Gossett*, 581 F3d at 899 (payment of veterans' benefits to a state hospital for the costs of care "prevents the somewhat perverse result of taxpayers picking up the bill twice for the care of an incompetent veteran"(quotation marks omitted)).

Based on the foregoing, we conclude that 38 USC section 5301(a)(1) does not preclude OHA from seeking reimbursement for the past costs of Cloud's maintenance and care from the veterans' benefits in Cloud's estate. Accordingly, we affirm the decision of the trial court.

Affirmed.