[No. 66928-1-I.   Division One.   October 15, 2012.]

THE STATE OF WASHINGTON, *Respondent,* v. CATHERINE MARIE ASHENBERNER, *Appellant.*

238

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Randi J. Austell, Deputy*, for respondent.

¶1 SCHINDLER, J. — Catherine Ashenberner appeals the court's determination that she willfully violated the judgment and sentence by failing to provide employment records to the King County Superior Court Clerk's Office

(Clerk's Office), and the imposition of a 60-day sanction. Ashenberner claims the court did not have the authority to require her to provide proof of income to the Clerk's Office. Because the court has the authority to enforce the terms of the judgment and sentence, we affirm.

## FACTS

¶2 In August 1997, Martin Meehan hired Catherine Ashenberner to work as a bookkeeper for Western Federal Mortgage. Ashenberner was not an authorized signor on the bank accounts. In 1999, Clay Barnes purchased the Seattle branch of Western Federal. Ashenberner continued to work as the bookkeeper for Seattle Federal Mortgage as well as Western Federal.

¶3 On July 7, 2000, Barnes discovered Ashenberner signed a $1,200 check made payable to herself on the Seattle Federal bank account. When Barnes confronted her, Ashenberner admitted that she forged the check and offered to repay Seattle Federal. Barnes terminated Ashenberner and notified Meehan.

¶4 An audit of the Western Federal and Seattle Federal bank accounts revealed that Ashenberner forged 53 checks while working at Western Federal, totaling $167,679.31, and 2 checks at Seattle Federal, totaling $2,000.00.

¶5 On June 11, 2001, the State charged Ashenberner with seven counts of theft in the first degree.[1] The information alleged that Ashenberner forged checks between May 27, 1999 and June 27, 2000 with the intent to deprive Western Federal of $167,679.31 and Seattle Federal of $2,000.00.

¶6 Ashenberner pleaded guilty as charged to seven counts of theft in the first degree and agreed to pay $167,679.31 in restitution to Western Federal and $2,000.00 to Seattle

---

[1] The State also charged Ashenberner with one count of perjury in the second degree.

Federal. Ashenberner also agreed that at sentencing, the certification of determination for probable cause "can be considered 'real facts.' "

¶7 At the sentencing hearing, the State recommended a standard-range sentence of 43 months and payment of the agreed restitution to Western Federal and Seattle Federal. Meehan addressed the court and described the impact of the theft on his business, his health, and his personal life.

> My business credit suffered. . . . I had to borrow money to make payroll. I really wondered if my company was going to make it. I went to the doctor for cluster headaches, just wondering what I was going to do.

¶8 Ashenberner admitted that she used the money to go on "nice vacations" and gave money to friends. Ashenberner told the court that she was committed to paying the agreed amount of restitution.

> THE COURT: The Department of Corrections says that the only conceivable reason you did this was greed. What do you have to say about that?
>
> Because what your attorney said is you gave it away to friends. That doesn't sound like greed. So I seriously doubt that's what you did with it.
>
> MS. ASHENBERNER: Well, I am not saying I gave all of it away. I took nice vacations. I would take people out and I would buy things for people. One person in particular that Mr. Meehan mentioned and I did try to get some of those things back, and she called the police on me.
>
> But it's not just greed. A lot of it is — I have been going through mental health counseling.
>
> THE COURT: Well, it sounds like greed to me.
>
> MS. ASHENBERNER: Okay. I am trying to figure out what is causing the self-destructive behavior and destructive behavior to other people and how to make amends to myself and to other people and to turn it back around.
>
> THE COURT: Is it your intention to make restitution?
>
> MS. ASHENBERNER: Yes. I would like to have been saving up money so that I would have had some to give.

THE COURT: You are going to have something to give after you get out of prison. Do you understand that you are going to have to pay it?

MS. ASHENBERNER: Yes.

¶9 The court imposed a sentence of 43 months and ordered Ashenberner to pay the agreed restitution amount of $169,679.31. The judgment and sentence states that the restitution payments shall be made to the King County Superior Court Clerk (County Clerk) on a schedule established by the Department of Corrections (DOC). The judgment and sentence "Schedule of Restitution," appendix E, orders Ashenberner to pay restitution in the amount of $167,679.31 to Western Federal and $2,000.00 to Seattle Federal, "payable in the installments and manner approved by the Community Corrections Officer and/or the Court."[2] The judgment and sentence also expressly states that the superior court retains jurisdiction for up to 10 years to assure payment of financial obligations:

**Defendant shall remain under the Court's jurisdiction and the supervision of the Department of Corrections for up to ten years from the date of sentence or release from confinement to assure payment of financial obligations**.

¶10 In 2003, the legislature amended the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizing the County Clerk to supervise the collection of financial obligations while the offender is "under the jurisdiction of the court for purposes of his or her legal financial obligations."[3] The amendment expressly applied to "all offenders currently, or in the future, subject to sentences with unsatisfied legal financial obligations."[4]

¶11 On September 16, 2003, DOC notified the court that effective January 1, 2004, Ashenberner no longer met the

---

[2] The court did not order community placement.

[3] Laws of 2003, ch. 379, §14(4) (amending former RCW 9.94A.760 (2001)).

[4] RCW 9.94A.925.

criteria for continued supervision by DOC. The notice states that DOC will provide contact information for Ashenberner to "the County Clerk of jurisdiction for purposes of billing, monitoring and collection of Legal Financial Obligations and Restitution." According to the notice, Ashenberner had made only one restitution payment of $113.42 on August 11, 2003.

¶12 On May 11, 2004, the State filed a motion to schedule a sentence modification and review hearing. The State alleged that Ashenberner refused "to account for the proceeds of the thefts" and did not provide the financial information requested by the Clerk's Office.

¶13 At the review hearing, the court entered an "Order Modifying Sentence." The Order requires Ashenberner to provide the financial information requested by the Clerk's Office.[5] The Order states, in pertinent part:

> The defendant shall provide all information requested by the Clerk's Office. This includes all information about the use of the money stolen from Seattle Federal Mortgage or Western Federal Mortgage.

¶14 On March 24, 2009, the Clerk's Office issued a "Notice of Violation" requesting a sentence modification and review hearing. The Notice of Violation states that Ashenberner had made restitution payments totaling $753.42. Prudence Brownell, the manager for legal financial obligations at the Clerk's Office, alleged that although Ashenberner claimed she was not employed, the quarterly records from the Washington State Employment Security Department showed that from the third quarter of 2005 through the final quarter of 2008, Ashenberner was working and using different Social Security numbers. The Notice of Violation states, in pertinent part:

> DOC set a minimum monthly payment schedule of $1,730.00. To date, Ms. Ashenberner has made payments in this

---

[5] The Order was entered on August 25, 2004.

matter totaling $753.42. Recent efforts by personnel with the King Co[unty] Court Clerk's office to locate employment information or other assets [have] been futile. Ms. Ashenberner claims she has been unemployed. However, a review of quarterly wage reporting to Employment Security from the third quarter 2005 thru fourth quarter 2008, shows that Ms. Ashenberner is working using three different social security numbers. A summary is attached.[6]

¶15 At the review hearing on June 16, 2009, the State asked the court to modify the terms of the judgment and sentence to require Ashenberner to "pay an amount each month based on the previous month's gross income," and "provide records to the Clerk's office as to what her gross wages were so that they can verify that she's in fact paying the appropriate amount." Ashenberner agreed. The court order modifying the terms of the judgment and sentence required Ashenberner to make restitution payments based on a percentage of income and to provide evidence of income each month to the Clerk's Office. The order states, in pertinent part:

[T]he schedule for the defendant's payments toward her legal financial obligations is the following. Each month the defendant shall make a payment toward her legal financial obligations based on the gross income she had in the previous month. She shall pay 10% of the first $1,000 of gross income, 20% of the next $1,000 of gross income, 30% of the next $1,000 of gross income, 40% of the next $1,000 of gross income and 50% of all income over $5,000 of gross income.

All other conditions remain in effect.

The defendant shall provide pay stubs or other evidence of income to the clerk's office monthly.

¶16 In June 2010, Brownell asked Ashenberner to provide "documentation of any and all income received in the past three months." On June 30, Ashenberner submitted a

---

[6] Brownell attached a summary of the information from Employment Security to the Notice of Violation.

financial statement of her assets and liabilities signed under penalty of perjury. Ashenberner stated that she is unemployed, she receives $75 in food stamps, and she receives $500 a month in rental income. Ashenberner also submitted Employment Security documentation showing that she was receiving unemployment compensation.

¶17 After meeting with Ashenberner on June 30, Brownell discovered that contrary to her representations, Ashenberner worked for multiple employers using different names and Social Security numbers in 2010. The State filed a motion for a sentence modification and review hearing. The State alleged Ashenberner willfully refused to make restitution payments and provide proof of income to the Clerk's Office.

¶18 At the hearing, Brownell testified that in 2010, Ashenberner paid only $50.00 in restitution but earned between $18,900.00 and $21,050.00. Brownell stated that Ashenberner had paid a total of $823.42 toward restitution. The State also submitted the June 2010 financial statement from Ashenberner and the Employment Security records. The Employment Security records show that throughout 2010, Ashenberner worked for a number of employers using different names and Social Security numbers.

¶19 The court found that Ashenberner willfully violated the order modifying the terms of the judgment and sentence by not paying restitution based on a percentage of her income, and by not providing "pay stubs and employment records to the Clerk's Office."

> Ms. Ashenberner, whatever happens to you, you've brought on yourself. You've shown disdain for the Court. You've shown disdain for all the people who have tried to work with you — please listen to me. We've tried to work with you. I can't imagine the amount of money that the County has spent trying to assist the victim of your crime in recovering restitution. You've lied to the clerk's office, you've lied to the Court through the documents that I've seen here about your barely surviving

when you were working and earning money and not even paying $10 a month or something to the Court.

So I think 120 days in confinement is appropriate in this case. You have not paid any attention to the requirements of your sentence, and hopefully when you do get out, you'll pay some attention and set up some reasonable amount that you can afford to pay through the clerk's office to provide some restitution for the victim of this crime.

The court imposed a sanction of 120 days of confinement in the King County jail for willfully failing to pay restitution and "[f]ailing to provide pay stubs and employment records to the Clerk's Office."

## ANALYSIS

¶20  Ashenberner does not challenge the finding that she willfully failed to pay restitution and the court's imposition of a 60-day sanction. Ashenberner contends the court did not have the authority to require her to provide employment records and proof of income to the Clerk's Office. Ashenberner asserts that only the Clerk's Office has the statutory authority to require her to provide employment and income records under RCW 9.94A.760(7)(b), and under RCW 9.94A.760(10), the authority of the court is limited to requiring her to make monthly restitution payments.[7] The State contends Ashenberner's narrow statutory argument ignores the jurisdiction of the court to enforce the order of restitution and the other statutory provisions of the SRA

---

[7] Before 2001, RCW 9.94A.760 was codified as RCW 9.94A.145. *See* Laws of 2001, ch. 10, §§ 3, 6 (recodifying RCW 9.94A.145 as RCW 9.94A.760). Since reenacting and amending RCW 9.94A.760 in 2003 to authorize the County Clerk to collect unpaid legal financial obligations, the legislature has amended the statute several times. *See* Laws of 2011, ch. 106, § 3; Laws of 2008, ch. 231, § 35; Laws of 2005, ch. 263, § 1; Laws of 2004, ch. 121, § 3. Because the post-2003 amendments did not substantively affect the provisions at issue in this appeal, we refer to the current version of RCW 9.94A.760 throughout the opinion.

that expressly give the court the authority to modify the judgment and sentence.[8] We agree with the State.

¶21 Interpretation of a statute is a question of law that we review de novo. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). The court's goal in interpreting a statute is to carry out the legislature's intent. *Gonzalez*, 168 Wn.2d at 263. If a statute is clear on its face, we use the plain language to identify legislative purpose and intent. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). We discern plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). The provisions of an act must be viewed in relation to each other and, if possible, harmonized. *Millay v. Cam*, 135 Wn.2d 193, 199, 955 P.2d 791 (1998). The court must avoid an interpretation that would produce an unlikely, absurd, or strained result. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

■ ¶22 RCW 9.94A.760(7)(b) authorizes the Clerk's Office to assume responsibility from DOC for supervising payment of restitution and require the defendant to provide documentation of income. RCW 9.94A.760(7)(b) states:

> Subsequent to any period of supervision, or if the department [(DOC)] is not authorized to supervise the offender in the community, the county clerk may make a recommendation to the court that the offender's monthly payment schedule be modified so as to reflect a change in financial circumstances. If the county clerk sets the monthly payment amount, or if the department set the monthly payment amount and the department has subsequently turned the collection of the legal financial obligation over to the county clerk, the clerk may modify the monthly payment amount without the matter being

---

[8] The State also argues Ashenberner waived her right to challenge the order modifying the terms of the judgment and sentence for the first time on appeal. We disagree. An " 'illegal or erroneous sentence[ ] may be challenged for the first time on appeal.' " *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)).

returned to the court. During the period of repayment, the county clerk may require the offender to report to the clerk for the purpose of reviewing the appropriateness of the collection schedule for the legal financial obligation. During this reporting, the offender is required under oath to respond truthfully and honestly to all questions concerning earning capabilities and the location and nature of all property or financial assets. The offender shall bring all documents requested by the county clerk in order to prepare the collection schedule.

¶23 RCW 9.94A.760(10) provides that an offender's monthly payment toward a legal financial obligation is a sentence condition. RCW 9.94A.760(10) states:

The requirement that the offender pay a monthly sum towards a legal financial obligation constitutes a condition or requirement of a sentence and the offender is subject to the penalties for noncompliance as provided in RCW 9.94B.040, 9.94A.737, or 9.94A.740.[9]

¶24 Relying on the rule of statutory construction that where a statute specifies the things upon which it operates, "expressio unius est exclusio alterius,"[10] Ashenberner claims that the court did not have the authority to enforce the order of restitution by requiring her to provide monthly income information to the Clerk's Office because RCW 9.94A.760(10) only identifies the requirement that the offender pay a monthly sum as a condition of sentence.

¶25 The premise of Ashenberner's argument is that RCW 9.94A.760(10) limits the court's authority to enforce the order of restitution. Ashenberner's technical argument ignores the broad authority of the court to enforce the order of restitution and other provisions of the SRA. The statutory provisions Ashenberner relies on do not exist in isolation but are part of "the sprawling statutory framework" of

---

[9] RCW 9.94A.737 and .740 address violations of community custody conditions. Because Ashenberner was not sentenced to community custody, RCW 9.94A.737 and .740 do not apply.

[10] *Wash. Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 280, 4 P.3d 808 (2000).

the SRA. *State v. Gamble*, 146 Wn. App. 813, 818, 192 P.3d 399 (2008).

¶26 The court's authority to impose restitution is statutory. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). The "language of the restitution statutes indicates legislative intent to grant broad powers of restitution." *State v. Davison*, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991). The restitution statutes require the defendant "to face the consequences of his or her criminal conduct." *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). The restitution statutes are interpreted broadly to carry out the statutory goals, and the court "do[es] not engage in overly technical construction that would permit the defendant to escape from just punishment." *Tobin*, 161 Wn.2d at 524.

¶27 Under the SRA, if the offender is convicted of an offense that results in loss of property, the court must order restitution. RCW 9.94A.753(5).[11] RCW 9.94A.753(5) provides, in pertinent part:

> Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record.

¶28 RCW 9.94A.753 states the offender shall remain under the jurisdiction of the court to enforce payment of restitution and the court has the authority to modify the portion of the sentence related to restitution as to amount, term, and conditions. RCW 9.94A.753(4) states, in pertinent part:

> *For the purposes of this section, for an offense committed prior to July 1, 2000, the offender shall remain under the court's*

---

[11] Before 2003, RCW 9.94A.753 was codified as RCW 9.94A.142. In 2003, the legislature reenacted and amended RCW 9.94A.142, authorizing the county clerk to collect unpaid restitution while the offender is under the court's jurisdiction for legal financial obligations, and recodified it as RCW 9.94A.753. Laws of 2003, ch. 379, § 16.

*jurisdiction for a term of ten years following the offender's release from total confinement or ten years subsequent to the entry of the judgment and sentence, whichever period ends later.* Prior to the expiration of the initial ten-year period, the superior court may extend jurisdiction under the criminal judgment an additional ten years for payment of restitution.... *The portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime.* The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount. The offender's compliance with the restitution shall be supervised by the department only during any period which the department is authorized to supervise the offender in the community under RCW 9.94A.728, 9.94A.501, or in which the offender is in confinement in a state correctional institution or a correctional facility pursuant to a transfer agreement with the department, and the department shall supervise the offender's compliance during any such period. The department is responsible for supervision of the offender only during confinement and authorized supervision and not during any subsequent period in which the offender remains under the court's jurisdiction. The county clerk is authorized to collect unpaid restitution at any time the offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations.[12]

¶29 RCW 9.94B.040 expressly authorizes the sentencing court to modify the restitution order and impose sanctions for noncompliance. RCW 9.94B.040 provides, in pertinent part:

**Noncompliance with condition or requirement of sentence—Procedure—Penalty.** (1) If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section.

---

[12] (Emphasis added.) Ashenberner was convicted for offenses committed between May 27, 1999 and June 27, 2000.

. . . .

(3) If an offender fails to comply with any of the require-
ments or conditions of a sentence the following provisions
apply:

. . . .

(c) . . . If the court finds that the violation has occurred, it
may order the offender to be confined for a period not to exceed
sixty days for each violation.

The plain language of RCW 9.94B.040(1) "demonstrates
that the superior courts retain authority . . . to *enforce* the
conditions of the sentences that they impose." *Gamble*, 146
Wn. App. at 818.[13] The court's jurisdiction to enforce a
sentence does not depend on the authority given to the
Clerk's Office. *State v. Johnson*, 54 Wn. App. 489, 491, 774
P.2d 526 (1989) ("[I]n the absence of statutory language
indicating otherwise, a sentencing court has jurisdiction to
enforce the requirements of a sentence imposed.").

¶30 In sum, while RCW 9.94A.760(7)(b) gives the Clerk's
Office the authority to require an offender to provide
income information, the plain and unambiguous language
of the SRA gives the court the authority to enforce the order
of restitution, require an offender to report income to the
Clerk's Office, and impose sanctions for willful violation of
the court's order. Because the court had authority to require
Ashenberner to provide evidence of monthly income to the
County Clerk, we affirm.

Cox and Dwyer, JJ., concur.

Review denied at 176 Wn.2d 1029 (2013).

---

[13] (Emphasis added.) *Gamble* addressed former RCW 9.94A.634 (2002), which
the legislature recodified as RCW 9.94B.040. *See* Laws of 2008, ch. 231, § 56. The
recodification made no substantive changes.