2015 SEP 14 AM 9: 10



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72043-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TED J. GRIMES, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 14, 2015 |

SCHINDLER, J. — Ted J. Grimes appeals the trial court order setting his monthly restitution payment. Grimes contends the trial court erroneously considered his exempt state and federal pension benefits. But the trial court properly took Grimes' pension benefits into account when determining his overall financial circumstances. Grimes also fails to demonstrate the order setting the amount of the restitution payment was comparable to execution, levy, attachment, or garnishment, or compelled him to make restitution payments from exempt funds. We affirm.

## FACTS

In 1998, the State of Washington charged Ted J. Grimes with eight counts of theft in the first degree and one count of theft in the second degree.

Grimes managed three related Federal Way companies: Pacific Coast Escrow Inc. (PCE); Pacific Coast Data Services Inc. (PCDS), which facilitated 26 U.S.C. section

1031 tax deferred real estate exchanges; and Pacific Coast Financial Services Inc. (PCFS). Grimes was responsible for all transactions at the three companies.

Grimes loaned money from PCDS's section 1031 exchange accounts to PCFS. PCFS, in turn, used those funds to make commercial loans at high interest rates. Grimes used the proceeds from the loans to pay for the construction of his new home and for other personal and business expenses. Grimes also made unauthorized withdrawals from PCE's escrow accounts. Grimes used false entries to the computerized accounting system to conceal his thefts.

The shortfall in PCE's accounts eventually exceeded $630,000 and PCE declared bankruptcy. After Safeco Insurance Company paid the policy limits of a $500,000 fidelity bond, PCE still owed clients $116,102. Grimes' clients lost more than $780,000 including taxes and consequential damages.

The jury found Grimes guilty of seven counts of theft in the first degree and one count of theft in the second degree. The court sentenced Grimes to a concurrent 60-month exceptional sentence. The court also ordered Grimes to pay restitution of $116,102 to the clients and $500,000 to Safeco for the bond funds paid to the victims. Grimes' judgment and sentence set minimum restitution payments as a percentage of his gross monthly income.

This court affirmed Grimes' convictions and the restitution order on appeal. State v. Grimes, 111 Wn. App. 544, 547-48, 46 P.3d 801 (2002), review denied, 148 Wn.2d 1002 (2003).

In 2000, the Department of Corrections set Grimes' monthly restitution payments at $633. Grimes began serving his sentence in 2003. Upon release in 2005, Grimes

initially paid $100 monthly toward restitution. He later reduced his monthly payment to $25.

In 2007, the Superior Court King County Clerk's Office (Clerk's Office) issued a "Notice of Violation" alleging Grimes had failed to comply with the restitution payment schedule and was uncooperative in providing accurate employment and financial information. Following a hearing in 2008, the trial court ordered the State to subpoena complete financial information from Grimes.

In January 2014, the Clerk's Office issued a second Notice of Violation alleging Grimes was in violation of his restitution payment schedule and had failed to disclose his complete financial situation. The Clerk's Office further alleged that Grimes' recent tax returns indicated that he could pay substantially more toward his restitution than the $25.00 per month he had paid since 2008. Based on the restitution payment schedule in the judgment and sentence, the Clerk's Office asked the court to order Grimes to pay at least $775.02 per month. At the time of the second violation notice, Grimes had paid a total of $26,642.49 in restitution. The outstanding balance was $1,564,245.74 of which $974,216.61 was interest on restitution.

The trial court conducted a hearing over the course of several days in March and April 2014. Both Grimes and a King County legal financial obligations officer testified at the hearing. Grimes argued the trial court could not consider his federal and state pension income and that his monthly restitution payment should be no more than $100. The trial court found Grimes' monthly income was about $3,000 and set the monthly restitution payment at $700.

The court entered an "Order on Failure to Pay" on May 14, 2014. The court also ordered Grimes to provide the Clerk's Office with an updated financial status report twice a year for the first year. The court declined to impose any sanctions on Grimes for the amount of his past restitution payments.

ANALYSIS

On appeal, Grimes contends that the trial court erred in setting a monthly restitution payment of $700 based on income from exempt sources. Grimes argues under state and federal statutes, his monthly Social Security benefits, military pension, and Boeing Co. pension are all exempt from seizure or attachment to pay his restitution obligation. Although Grimes offers several different calculations, he asserts the exempt monthly payments constitute at least $2,700. Based on the trial court's finding of a monthly income of $3,000, Grimes appears to claim that his restitution payment must be based on a monthly income of not more than $300.

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the trial court has broad statutory authority to order restitution. State v. Ashenberner, 171 Wn. App. 237, 248, 286 P.3d 984 (2012). After ordering restitution, the trial court must then "set a minimum monthly payment that the offender is required to make towards the restitution that is ordered." RCW 9.94A.753(1). Under RCW 9.94A.753(4), the trial court retains authority to modify the portion of the sentence related to restitution

> as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime. The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount.

We generally review the trial court's imposition of restitution for an abuse of discretion. State v. Enstone, 137 Wn.2d 675, 679, 974 P.2d 828 (1999).

Preliminarily, we note our review of the arguments Grimes makes on appeal is hampered by his failure to provide a complete appellate record. As the appellant, Grimes bears the burden of providing this court with all portions of the record necessary to review the issues raised on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). Grimes prepared a partial verbatim report containing only a portion of his own testimony and a limited discussion of the exemption issue. The record indicates the parties relied primarily on written briefs submitted to the trial court. Grimes did not include the briefs as part of the record on appeal. Consequently, we cannot determine the precise legal arguments Grimes raised in the trial court.

Moreover, Grimes' arguments rest on his extensive factual allegations about the history of the case and his financial circumstances. But in violation of the Rules of Appellate Procedure, Grimes does not support these factual allegations with any meaningful reference to the record. See RAP 10.3(a)(5), (6) (statement of the facts and legal argument require references to relevant parts of the record). An appellate court has no obligation to search the record for evidence supporting a party's arguments. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

On appeal, Grimes relies primarily on RCW 6.15.020(2). RCW 6.15.020(2) states, in pertinent part:

> Unless otherwise provided by federal law, any money received by any citizen of the state of Washington as a pension from the government of the United States, whether the same be in the actual possession of such person or be deposited or loaned, shall be exempt from execution,

attachment, garnishment, or seizure by or under any legal process whatever.

Grimes also contends the antiattachment provision of the Social Security Act, 42 U.S.C. section 407(a),[1] and the Veterans Benefits Administration antialienation statute, 38 U.S.C. section 5301(a)(1),[2] prohibit the trial court from considering his monthly Social Security benefits and military pension benefits when determining the amount of restitution payments.

Our Supreme Court reviewed Washington exemption statutes in Anthis v. Copland, 173 Wn.2d 752, 270 P.3d 574 (2012). The court notes that unlike other exemption statutes, RCW 6.15.020(2) and certain federal statutes contain express language exempting pension benefits from attachment both before and after deposit into the recipient's personal bank account. Anthis, 173 Wn.2d at 758-61 (exemption in RCW 41.26.053(1) for law enforcement officer and firefighter retirement system pension benefits does not continue once pension funds are deposited into personal account of the beneficiary); see also First-Citizens Bank & Trust Co., 181 Wn. App. 595, 601, 326 P.3d 808 (2014) (exemption under 25 U.S.C. section 410 for money derived from lease

---

[1] 42 U.S.C. section 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(Emphasis added.)

[2] 38 U.S.C. section 5301(a)(1) provides, in pertinent part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

(Emphasis added.)

of Indian trust land extends to money deposited in personal bank account); In re Estate of McPherson, 170 Wn. App. 411, 417-18, 283 P.3d 1135 (2012) (42 U.S.C. section 407(a) and 38 U.S.C. section 5301 do not shield assets derived from exempt benefits after beneficiary's death).

But even if we assume that RCW 6.15.020(2) and the other cited federal statutes apply to Grimes' claimed pension income both before and after deposit into his bank account, Grimes makes no showing that the trial court could not consider that income when setting the restitution payment. To determine a minimum monthly payment for restitution, the trial court "should take into consideration the total amount of the restitution owed, the offender's present, past, and future ability to pay, as well as any assets that the offender may have." RCW 9.94A.753(1). For purposes of the statutes governing restitution and legal financial obligations, RCW 9.94A.7601 defines "earnings" as follows:

> [C]ompensation paid or payable for personal services, whether denominated as wages, salary, commission, hours, or otherwise, and notwithstanding any other provision of law making such payments exempt from garnishment, attachment, or other process to satisfy court-ordered legal financial obligations, specifically includes periodic payments pursuant to pension or retirement programs, or insurance policies of any type.[3]

Nothing in RCW 6.15.020(2) or the federal exemption statutes preclude the trial court from considering pension benefits when assessing the defendant's overall financial circumstances for purposes of setting the amount of restitution payments.

Further, Grimes has not established that the trial court's order setting a restitution payment constituted "execution, attachment, garnishment, or seizure by or under any

---

[3] Emphasis added.

7

legal process whatever." RCW 6.15.020(2). In <u>Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003), the United States Supreme Court addressed a similar provision of the Social Security Act, 42 U.S.C. section 407(a). The Court first noted that the terms "execution, levy, attachment [and] garnishment" as used in 42 U.S.C. section 407(a) were legal terms of art that "refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization." <u>Keffeler</u>, 537 U.S. at 383. The Court concluded that under the interpretative canons of noscitur a sociis and ejusdem generis, the phrase "other legal process" must be construed restrictively in the context of 42 U.S.C. section 407(a):

> Thus, "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

<u>Keffeler</u>, 537 U.S. at 384-85 (department's use of Social Security benefits to offset cost of care for foster children did not violate antiattachment provision of 42 U.S.C. section 407(a)); <u>see also</u> <u>In re Guardianship of Knutson</u>, 160 Wn. App. 854, 871, 250 P.3d 1072 (2011) (order directing estate guardians to use Social Security benefits to pay incapacitated adult's cost of care did not violate antiattachment provision of 42 U.S.C. section 407(a)).

8

Grimes cites no authority suggesting that the order setting the amount of his restitution payment involved a legal process comparable to execution, levy, attachment, or garnishment.

Grimes' arguments also assume the trial court's order required him to pay his restitution obligation with exempt funds. The record does not support his arguments.

Grimes testified he had borrowed $150,000 after his release from prison without telling the bank about the restitution obligation. Grimes acknowledged he always makes the $1,550 monthly payment on the loan and a voluntary monthly payment of $1,358 to his sister for a "moral obligation." The monthly loan payment and voluntary payment alone exceeded Grimes' claimed monthly income of $2,800. The record also shows that Grimes always pays his credit card statements. And as the trial court noted, his monthly expenses included "luxuries" such as $200 for a cell phone and $125 for cable television. On the record before us, Grimes fails to make any showing that the trial court's order compelled him to pay his $700 restitution obligation with the allegedly exempt funds. The trial court did not abuse its discretion in setting Grimes' monthly restitution payment at $700.

For the first time on appeal, Grimes contends the trial court violated his Fourth Amendment right to privacy and his Fifth Amendment right against self-incrimination by requiring intrusive twice-yearly financial reports. Grimes claims the financial reports improperly compelled him to provide information "regarding his daily whereabouts and financial activities."

Generally, this court will not address issues that are not first presented to the trial court. RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

In any event, Grimes' arguments are too conclusory to warrant consideration. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

We affirm.

WE CONCUR:

Schindler, J.

Spearman, C.J.                    Becker, J.